NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0033n.06

No. 22-3378

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 18, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THOMAS A. COVERDALE,<br>    Plaintiff - Appellant,<br>v.<br>DAVID CONLEY,<br>    Defendant - Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO<br><br>OPINION |

Before: KETHLEDGE, WHITE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Thomas Coverdale, a former state prisoner, sued under 42 U.S.C. § 1983, alleging that Nurse Practitioner David Conley violated the Eighth Amendment, as incorporated by the Fourteenth Amendment, by not providing him with timely medical care for an umbilical hernia. The district court granted summary judgment to Conley. For the reasons explained below, we AFFIRM.

I

In June 2017 Coverdale was transferred as an inmate to the Southern Ohio Correctional Facility (SOCF). During intake, Coverdale notified medical staff of various medical issues, including an umbilical hernia from which he had suffered since 2011. A hernia generally describes a weakness or defect of the abdominal walls leading to protrusion of the abdominal cavity; "[i]nto such a protrusion may pass one or more of a variety of organs." 4 Lawyers' Medical Cyclopedia § 30.155. An umbilical hernia occurs at or near the umbilicus, i.e., the belly button. *Id.* § 30.160.

No. 22-3378, *Coverdale v. Conley*

Coverdale's hernia was a subject of discussion when he met with Nurse Practitioner Conley on August 22, 2017. Coverdale maintains that Conley did not examine the hernia and told him the facility would not pay for hernia surgery. Conley's medical notes, however, do not reflect such an exchange, and instead show that Conley completed an abdominal exam. Further, the notes record that "Pt was rude, argument[at]ive inconsistent and misleading" and that Conley made "[s]everal attempts to redirect and asked pt to stop interrupting during HPI [History of Present Illness evaluation]." Medical Records, R.24-4, PageID 266. In the general examination findings, Conley described Coverdale as "in no acute distress, unpleasant." *Id.*

Six days later, on August 28, 2017, Coverdale did receive surgical consultation with Dr. Sherman Katz of Franklin Medical Center. Although the appointment was scheduled for another medical condition, a perianal fistula, the examination ended up including an evaluation of the hernia as well. Dr. Katz's notes reflected that the hernia "can be manually reduced with some difficulty"; that Coverdale had been living with the increasingly symptomatic umbilical hernia for 6 to 9 years; that Coverdale's skin was "shiny, skewed to left"; and that Coverdale's abdominal exam was "otherwise not abnormal." To repair both the hernia and the perianal fistula, Dr. Katz ordered two surgeries for Coverdale, both of which were to be scheduled by the Department of Surgery at the Ohio State University (OSU). Dr. Katz did not specify that the hernia surgery needed to be scheduled on an expedited basis.

A few days later, on September 1, 2017, Coverdale saw Conley again. According to Coverdale, Conley told him "Hell no, I don't care what Dr. Katz told you. ODRC will not pay for your hernia surgery." On September 13, Coverdale was examined by a colorectal surgeon at OSU. He indicated that OSU would proceed with Coverdale's fistulotomy but did not mention the need for hernia surgery.

No. 22-3378, *Coverdale v. Conley*

On October 30, 2017, at around 1:00 p.m., Coverdale developed an unusual and intense pain in his umbilical hernia. He got the attention of two officers, who called for medical help. Medical staff then brought him by wheelchair to the prison infirmary, where intake forms described his condition as a "Medical Emergency." By that point, according to Coverdale, his hernia was hard, red, and the size of a softball, and his pain level was "10." Yet, according to the intake note, there was no redness or warmth at the hernia site, and although the hernia was painful, it had not produced any nausea.

At approximately 2:46 p.m., Conley examined Coverdale. Coverdale claims he could not walk, but Conley's notes reflect that Coverdale was experiencing "no acute distress" and had a normal gait and full range of motion. Medical Records, R.24-4, PageID 269. Conley also wrote that the gastrointestinal examination reflected "no guarding, soft, non-tender/non-distended, bowel sounds present, umbilical hernia reducible, Pt used abd muscles during hernia physical exam." *Id.* Conley assessed Coverdale as "Malingering" and wrote:

> Pt Hx not credible and is inconsistent throughout Hx and exam. Diet and exercise reviewed with patient. Pt teaching on notifying medical if any changes. Pt teaching on findings, outcomes and plan. Denies any concerns. Admit to infirmary. Will continue to monitor.

*Id.* According to his declaration in the district court, Conley determined that Coverdale was "suffering from a reducible umbilical hernia for which he had a six-year history." Dec'l of Dave Conley ¶4, R.24-5, PageID 302.

Coverdale maintains that Conley mistreated him during the physical examination. Conley pressed on the hernia, which caused Coverdale to pull away because of pain. Conley then stated, "I don't have time for this, I'm outta here. I have a Halloween party to take my wife to." Dec'l of Thomas Coverdale ¶18, R.31-1, PageID 347. Coverdale also claims that he "begged Conley to examine me and made clear that I wasn't refusing medical treatment by pulling away." *Id.* ¶19.

No. 22-3378, *Coverdale v. Conley*

But, Coverdale states, "Conley did not acknowledge what I said and left." *Id.* Then, according to Coverdale, the porter of the infirmary heard Conley tell the nearby officers: "Don't worry about inmate Coverdale. He's just trying to get pain medicine." *Id.* ¶21.

Conley ordered Coverdale to be monitored overnight in the infirmary rather than be returned to his cell. Conley prescribed 650 mg Tylenol for pain and left call orders that directed staff to contact him if Coverdale showed any "[c]hange in status," such as "Temp greater than 101.5 [or] [d]rop in blood pressure." Medical Records, R.24-4, PageID 271–72.

According to Coverdale, his condition changed at around 9:30 p.m.: "I felt something inside my abdomen explode, which sent excruciating pain throughout my entire body." Dec'l of Thomas Coverdale ¶23, R. 31-1, PageID 347. There is nothing in the medical records documenting this change in status and no evidence that Conley, whose work shift had ended five hours earlier, was notified of the event. Indeed, the parties do not dispute that, despite leaving orders to be contacted if there was any change in Coverdale's status, Conley was never contacted by any staff that evening.

But Coverdale claims that he screamed all night for help. He describes the pain he felt from the hernia as "excruciating." According to Coverdale, his pleas for help were ignored, and although he was pressing the call button, the medical staff turned it off. On the other hand, the medical notes do not indicate he was left unattended. There are multiple notes describing his condition throughout the evening, written by the different nurses who examined him. RN Janie Sharp's chart note, for example, recorded "[l]evel 10" pain and abdomen around hernia "soft" with "[n]o warmth or redness." Medical Records, R.24-4, PageID 279. Other nurse notes from that evening reflect that Coverdale showed "no acute distress," with respirations "easy and unlabored."

4

No. 22-3378, *Coverdale v. Conley*

In the early morning hours of October 31, 2017, nurse Brandon Lindamood recorded in chart notes that Coverdale appeared asleep, with normal breathing and no complaints. By 7:46 a.m., Coverdale was awake, but according to Lindamood's notes, the patient refused to take his morning dose of Tylenol and to allow staff to interact with him to assess his vitals. At 8:09 a.m., Coverdale was examined. According to the medical notes, the hernia was no longer reducible. Conley (now returned) then conferred with Dr. Andrew Eddy, the State Medical Director for the Ohio Department of Rehabilitation and Correction, and determined that Coverdale should be sent to the OSU hospital for emergency surgical consultation. Conley also prescribed an additional pain medication, Toradol, for Coverdale.

At the OSU hospital Coverdale had emergency surgery for a perforated bowel and, over the next few weeks, had multiple recurring hernias, a bowel obstruction, and intestinal abscesses. As a result, Coverdale had a colostomy bag attached to his body for 9 months for the disposal of stool. Coverdale "admit[ted] that the undisputed medical evidence shows that his complications were unrelated to any delay in the surgical treatment of his hernia on October 30." Report and Recommendation, R.34, PageID 370 (citing Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment, R.31, PageID 332).

Coverdale sued Conley under 42 U.S.C. § 1983. On October 27, 2021, the magistrate judge issued a report and recommendation, recommending summary judgment for Conley. On March 30, 2022, the district judge issued an order adopting the magistrate judge's report and recommendation over Coverdale's objections. *Coverdale v. Conley*, Case No. 1:19-cv-920, 2022 U.S. Dist. LEXIS 58635, 2022 WL 950307, at *7 (S.D. Ohio Mar. 30, 2022). Coverdale timely appealed.

No. 22-3378, *Coverdale v. Conley*

II

We review a grant of summary judgment de novo. *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish a genuine issue of material fact, there must be evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,' this Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (quoting *Anderson*, 477 U.S. at 251–52, 255).

The summary judgment granted below was with respect to a claim under 42 U.S.C. § 1983. That statute, as relevant here, provides a cause of action against "[e]very person who, under color of" state law deprives a citizen "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Coverdale bases his section 1983 claim on Conley's alleged deprivation of his rights under the Eighth Amendment, as applied to the states through the Fourteenth Amendment. The parties do not dispute that Conley acted under color of state law. The issue here is whether Coverdale has evidence that would allow a reasonable jury to find that Conley violated the Eighth Amendment.

"[T]he treatment a prisoner receives in prison and the conditions under which [a prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). This constitutional provision, as it pertains here, "prohibits the 'inflict[ion]' of 'cruel and unusual punishments'

No. 22-3378, *Coverdale v. Conley*

against those convicted of crimes." *Rhinehart*, 894 F.3d at 735 (quoting U.S. Const. amend. VIII). In the prison medical-needs context, a prison medical care provider can be said to have inflicted cruel and unusual punishment only through the "unnecessary *and wanton* infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). It is not enough just to show "inadvertent failure to provide adequate medical care," *Estelle*, 429 U.S. at 105, or a "negligent . . . diagnos[is]," *id.* at 106. Rather, Conley must have exhibited "deliberate indifference to" Coverdale's "serious' medical needs." *Wilson*, 501 U.S. at 297 (quoting *Estelle*, 429 U.S. at 106) (quotation marks omitted).

To make this showing of deliberate indifference to serious medical needs, Coverdale needs proof of "two components—one objective and the other subjective." *Id.* (citing *Farmer*, 511 U.S. at 834). First, Conley's "alleged wrongdoing" must be "objectively harmful enough to establish a constitutional violation"; second, Conley must have "acted with a culpable enough state of mind, rising above gross negligence." *Id.* (citing *Farmer*, 511 U.S. at 834–35).

The objective component requires Coverdale "to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart*, 894 F.3d at 737 (citing *Farmer*, 511 U.S. at 834). Where, as here, "an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989))). "This will often require 'expert medical testimony . . . showing the medical necessity for' the desired treatment and 'the inadequacy of the treatments' the inmate received." *Id.* at 737–38 (quoting *Anthony v. Swanson*, 701 F. App'x 460, 464 (6th Cir. 2017)). "The plaintiff also must

No. 22-3378, *Coverdale v. Conley*

'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id.* at 738 (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004). And in our review of the record, we bear in mind that if "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

According to Coverdale's appellate brief, his claim is "that NP Conley's refusal to send him to the hospital on October 30, 2017, caused him to suffer in unnecessary pain for eighteen hours and constituted deliberate indifference to serious medical needs in violation of the Eighth Amendment." Appellant's Br. at 4. But Coverdale offers no medical testimony to support his claim. Instead, he offers his own word, which is contradicted in many significant aspects by the medical records and other proof.

It is obvious that Coverdale had a serious medical need to go to the hospital on the morning of October 31, when he was sent to emergency medical surgery. But Coverdale has not shown that it was obvious to Conley that this need existed the afternoon before, when Conley examined him. Conley knew that Coverdale had suffered from his umbilical hernia for many years but that it had always been reducible without surgery. True, Dr. Katz had recommended surgery, but he also had noted in the physical exam that Coverdale's hernia still could "be manually reduced with some difficulty." And the colorectal surgeon who later examined Coverdale had ordered a fistulotomy with no mention of the need for a hernia operation, which OSU had yet to schedule. When Conley examined Coverdale at the prison infirmary on October 30, he may have made an error in medical judgment when he did not send him to the hospital right away. But given Conley's knowledge that Coverdale had lived with his hernia for many years without surgery, and given that

8

y
now

No. 22-3378, *Coverdale v. Conley*

neither of the medical doctors who had examined Coverdale's medical records deemed the hernia operation to be imminently necessary, evidence is lacking that such surgery for Coverdale was obviously required on the afternoon of October 30.

During the examination performed by Conley, Coverdale complained of strong pain and being unable to walk. But by his own admission, Coverdale's symptoms did not dramatically change until around 9:30 p.m., almost seven hours after Conley had examined Coverdale and some five hours after Conley's work shift had ended. Conley never received word from medical staff that evening of any change in Conley's condition. It was not until the next morning, when Conley returned, that he discovered that Coverdale's hernia could not be reduced, at which point Conley sent him to the hospital for surgery. Given these undisputed facts, the proof is lacking that Coverdale's need for immediate surgery was so obvious when Conley examined him in the afternoon of October 30—their only interaction that day. Perhaps in 20-20 hindsight, Coverdale did need to go the hospital that afternoon. But based on the evidentiary record, no reasonable jury could find that Conley's judgment call to treat Coverdale at the prison infirmary and have staff monitor him overnight, rather than send him to the hospital that afternoon, was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart*, 894 F.3d at 737 (quotation marks and citations omitted). Because Coverdale's claims fail to satisfy the objective component, we decline to discuss the subjective component.

### III

For the forgoing reasons, we AFFIRM the order of the district court.